

**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

Main: 240-777-9400

50 Maryland Avenue
Rockville, Maryland 20850

Exhibit A

**To:** J.J.F. MANAGEMENT SERVICES INC.
DBA FITZGERALD AUTO MALLS
1411 ROCKVILLE PIKE
ROCKVILLE, MD 20852
SERVE: CSC-LAWYERS INCORPORATING SERV.
7 ST PAUL STREET SUITE 820
BALTIMORE MD 21202

**Case Number:**      **C-15-CV-25-002188**
**Other Reference Number(s):**

**ARNOLD ABRAHAM, ET AL. VS. J.J.F. MANAGEMENT SERVICES INC.**

Issue Date: 5/5/2025

### WRIT OF SUMMONS (NEW CASE)

You are hereby summoned to file a <u>written</u> response by pleading or motion, within 30 days after service of this summons upon you, in this Court, to the attached complaint filed by:

Abraham, Arnold; ABRAHAM, ARNOLD
80 M St SE
Ste 100
Washington, DC 20003

Witness, the Honorable Chief Judge of the Sixth Judicial Circuit of Maryland.

TO THE PERSON SUMMONED:

1. Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
2. If you have been served with a Scheduling Order, your appearance is required pursuant to the Scheduling Order, regardless of the date your response is due.
3. If you have questions, you should see an attorney immediately. If you need help finding an attorney, you may contact the Bar Association of Montgomery County's Lawyer Referral Service online at <u>www.barmont.org</u> or by calling (301) 279-9100.

*Karen A Bushell*

Karen A. Bushell
Clerk of the Circuit Court

NOTE:

1. This summons is effective only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. This summons is effective for service only if served within 60 days after the date it is issued.
3. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reason(s).

**Arnold Abraham, et al. vs. J.J.F. Management Services Inc.**          **Case Number: C-15-CV-25-002188**

4. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
5. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

Arnold Abraham, et al. vs. J.J.F. Management Services Inc.          Case Number: C-15-CV-25-002188

## RETURN

☐ Served _____ on _____ at _____
                 Whom                                Date                        City/State/Country

☐ Summons and   ☐ Show Cause Order and   ☐ Complaint/Petition/Motion Served

☐ Unserved _____ _____
               Date                                 Reason

_____ ☐ Sheriff
Signature

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| ARNOLD ABRAHAM, an individual, *and on behalf of all others similarly situated.* <br><br> c/o Lexero Law <br> 80 M St SE Ste 100 <br> Washington, DC 20003 <br><br> v. <br><br> J.J.F. MANAGEMENT SERVICES INC. <br> *D.B.A. FITZGERALD AUTO MALLS* <br> 1411 Rockville Pike <br> Rockville, MD 20852 <br><br> *Serve*: CSC-Lawyers Incorporating Serv. <br> 7 St. Paul Street Suite 820 <br> Baltimore, MD 21202 | Case No: ___C-15-CV-25-002188___ <br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Arnold Abraham, an individual ("Abraham" or "Named Plaintiff"), on behalf of himself and others similarly situated, by and through undersigned counsel, sues Defendant, J.J.F. Management Services Inc. d.b.a. Fitzgerald Auto Malls ("FitzMall" or "Defendant") and states as follows:

1.      This class action seeks monetary and injunctive relief to redress injuries resulting from Defendant's negligence and wrongful acts related to a computer data breach that exposed the personal data of individuals who were customers, clients or prospects of FitzMall.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action as the amount in controversy exceeds $25,000, exclusive of interest and costs, and the relief sought includes equitable, declaratory, and injunctive relief for which the Circuit Court has exclusive jurisdiction.

3.      At all times material hereto, Plaintiff was *sui juris* and a resident of Anne Arundel County, Maryland.

4.      This Court has personal jurisdiction over the present matter because Defendant is a resident of Montgomery County, Maryland, with a business address in Rockville, MD.

5.      Venue is also appropriate in this Court because FitzMall's headquarters are in Rockville, MD.

6.      Maryland is also where a substantial portion of the events or omissions giving rise to this claim occurred and a substantial portion of the property that is the subject of this action is situated.

## FACTUAL BACKGROUND

### Defendant FitzMall

7.      J.J.F. Management Services Inc. is a Maryland corporation that was first established in Maryland in 1974.

8.      On information and belief, FitzMall is a privately owned and independent automobile retailer that offers sales locations in Gaithersburg, MD and Rockville, MD, among others.

9.      In conjunction with its vehicle sales, FitzMall advertises and offers financing services.

10.     Among other things, consumers can access a "Secure Online Credit Application" on the fitzmall.com website, owned by Defendant.

11.     "Personal information" ("PI") is defined under Maryland's Personal Information Privacy Act §14–3501(e)(1).

12.     On information and belief, FitzMall regularly collects and stores a wide variety of

2

Personal Information and financial information from its consumers, including from its customers seeking financing services.

13.    On information and belief, personal and financial information collected by FitzMall regularly includes a customer's name, address, phone number, email address, financial account information, credit scores, social security number, and more.

14.    On information and belief, FitzMall collects and stores documents and other files that contain a consumer's personal and financial information, such as credit applications, bank statements, credit reports, state identification cars, driver's licenses, and more.

15.    On information and belief, FitzMall is a member of the National Automobile Dealers Association (NADA).

16.    The NADA Ethics Guide requires that dealers like FitzMall "Maintain customer service records as required by law" and "Exercise reasonable care for the customer's property while in the dealership's possession." *See* NADA Ethics Guide, *available at* https://www.nada.org/nada/about-nada/code-of-ethics/ethics-guide (last accessed April 30, 2025).

### The Data Breach

17.    On information and belief, FitzMall did not place sufficient priority on cyber security or maintaining privacy of their clients' Personal Information.

18.    Plaintiff was a prospect or client of FitzMall and entrusted Defendant with Plaintiff's PI and financial information.

19.    At all times material hereto, Plaintiff's PI was stored on FitzMall's computer network and related cloud based network.

20.    On April 25, 2025, Plaintiff received an email from email address FitzgeraldAutoMallsNotice@m.cyberscout.com with a "From:" description of "Fitzgerald Auto

3

Malls Incident Notice."

21.     The subject of the email was "Important Information Please Review Carefully."

22.     The email stated that on or about February 4, 2024, "Fitzgerald Auto Malls detected unauthorized access to our network as a result of a cybersecurity incident that resulted in the exposure of the data we maintain."

23.     The date of the unauthorized access in 2024 was more than a full calendar year before FitzMall notified the individuals that were affected, in April of 2025.

24.     The email went on to state that "We promptly launched an investigation assisted by external cybersecurity professionals experienced in handling these types of incidents. Our forensic investigation determined that data may have been accessed or acquired by the unauthorized party."

25.     The email further stated that "We conducted a thorough manual review of the data potentially contained on the impacted servers. After extensive efforts to identify, review, and analyze the potentially impacted data, on March 28, 2025, we determined that the impacted files contained your personal information."

26.     The email further stated that "In response to this incident and through our continuing comprehensive review, we have strengthened our network and implemented additional security improvements recommended by third-party cyber security experts."

27.     The email text contained in the foregoing paragraph was a tacit admission that in the period leading up to the breach, the Defendant's existing network was insufficiently "strengthened" and did not contain "security improvements recommended by third-party cyber security experts."

28.     In sum, Defendant suffered from a breach in their computer network security that

4

had affected the privacy and PI of Plaintiff and numerous other clients.

29.    As a result of the breach, the PI of Plaintiff was accessed and disclosed in an unauthorized manner.

30.    FitzMall did not reveal what actions were taken by the unauthorized actor during the time they had access to FitzMall's employee email network.

31.    FitzMall did not reveal why it took it *more than a full calendar year* to disclose the failure of their computer network security that resulted in the data breach.

32.    FitzMall provided no explanation for the delay in notification to those affected.

33.    FitzMall's breach notification, as e-mailed to those impacted, provided no information as to who was suspected of being the source of the breach or what specific failure there was in their security architecture, network, policy, or procedures.

34.    FitzMall's breach notification e-mailed to those impacted provided no specific details as to what technical measures were taken to secure their network.

35.    FitzMall's breach notification e-mailed to those impacted provided no details as to the additional security measures and training they have undertaken to prevent future such incidents.

36.    On information and belief, the integrity of FitzMall's entire computer network was compromised as a result of this breach incident.

37.    On information and belief, the confidentiality of all information on FitzMall's computer network was compromised based on this breach incident.

38.    On information and belief, *all* of FitzMall's current and former clients had their PI and financial records exposed as a result of this breach.

39.    Plaintiff, despite not having been a client of FitzMall for many years, was

nonetheless victimized because FitzMall did not regularly purge or securely archive data of its customers, including PI of Plaintiff.

40.    On information and belief, data present on FitzMall's network, including PI of current and former clients, was copied, downloaded and exfiltrated by criminal actors during the time they had unauthorized access.

41.    On information and belief, the compromised PI of current and former clients remains in the hands of criminal actors that breached FitzMall's network.

**FitzMall's Failures to Secure Data and Manage the Resulting Data Breach**

42.    On information and belief, the information accessed without authorization included the name, address, Social Security number, financial account information, date of birth, driver's license, state issued identification number, and email address of its clients.

43.    The information listed in the above paragraph fits in the category of financial information and Personal Information ("PI").

44.    Breaches of PI are subject to the provisions of the Maryland Personal Information Privacy Act ("MD PIPA").

45.    FitzMall did not comply with breach notification requirements of MD PIPA.

46.    On information and belief, FitzMall had been well aware of the risk posed to financial records such as what was exposed in this case.

47.    In the alternative, FitzMall should reasonably have been well aware of the risk of cyber security breach such as what took place in this case.

48.    On information and belief, FitzMall had access to numerous resources to provide awareness of the cyber threats to their network and to prepare defenses against such attacks.

49.    On information and belief, FitzMall failed to leverage countless available third-

party resources to improve its cybersecurity posture.

50.      On information and belief, despite its understanding of the need for cybersecurity, FitzMall had no effective means to prevent, detect, stop, or mitigate breaches of its computer systems.

51.      On information and belief, FitzMall failed to adequately train its employees on cybersecurity and failed to maintain reasonable computer security safeguards and protocols to protect PI in its possession.

## Plaintiff and Class Member's Losses and Damages

52.      As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have sustained and will continue to sustain economic loss and other harms.

53.      Plaintiff and class members will sustain, or have sustained, direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in their personal and professional lives.

54.      Plaintiff and class members will sustain, or have sustained, theft of their Personal Information.

55.      Plaintiff and class members will sustain, or have sustained, publication of their Personal Information to the Dark Web.

56.      Plaintiff and class members will sustain, or have sustained, damages to and diminution in value of their Personal Information.

57.      Plaintiff and class members will sustain, or have sustained, loss of the opportunity to control how their Personal Information is used.

58.      Plaintiff and class members will expend, or have expended, time spent on efforts to research how to prevent, detect, contest, and recover from misuse of their Personal Information;

59.     Plaintiff and class members will sustain, or have sustained, emotional distress from the unauthorized disclosure of information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and other class members.

60.     Plaintiff and class members will sustain, or have sustained, continued risk of exposure to hackers and thieves of their information, which remain in Defendant's possession and is subject to further breaches so long as FitzMall fails to undertake appropriate and adequate measures to protect Class members' data.

61.     Plaintiff and class members will sustain, or have sustained, costs associated with attempting to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

62.     Plaintiff and class members will sustain, or have sustained, loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the breach.

63.     Plaintiff and class members will sustain, or have sustained, money and time to prevent, detect, contest, and repair identity theft, fraud, and other unauthorized uses of their Personal Information, including by identifying, disputing, and seeking reimbursement for fraudulent activity and canceling compromised financial accounts and associated payment cards, imposing withdrawal and purchase limits on compromised accounts and other accounts subject to potential compromise; and enrolling in credit monitoring and identity theft protection services.

64.     Plaintiff and class members will expend, or have expended, money and time to periodically order credit reports and place temporary freezes on credit.

65.     Plaintiff and class members will expend, or have expended, money and time to avail themselves of assets and/or credit frozen or flagged due to misuse.

8

66.      Plaintiff and class members will sustain, or have sustained, impairment of their credit scores, ability to borrow, and/or ability to obtain credit.

67.      Plaintiff and class members will sustain, or have sustained, anticipated future costs from the purchase of credit monitoring and identity theft protection services.

68.      Plaintiff and class members will sustain, or have sustained, costs associated with additional computer security needed due to increased personal vulnerability to cyber threats, including the enhanced risk of potential phishing attacks specifically crafted based on the extensive PI revealed, such as increased costs for anti-malware software and network security software and monitoring services on all of Plaintiff's electronic devices, as well as increased time and effort to monitor for potential intrusions and respond to cyber security incidents on their personal devices and networks.

69.      Plaintiff and class members were or will be required to spend a substantial amount of time responding to and rectifying the losses incurred.

70.      Plaintiff alleges that any and all time spent responding to and rectifying the breaches and losses described herein is properly valued at a fair hourly rate, multiplied by the time expended.

71.      The full impact of the violation of privacy through this breach can only be measured over the course of the lifetime of those affected.

72.      Plaintiff and class members experienced and/or face an increased risk of direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in his personal and professional life.

73.      Plaintiff and class members experienced and/or face an increased risk of emotional distress, mental pain and suffering due to exposure of highly sensitive private information.

9

## CLASS ALLEGATIONS

### Statement of Maintainable Class Claims

74.     Pursuant to Md. Rule 2-231, Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated pursuant to Md. Rule 2-231(b)(2) and (3).

### Definition of Class

75.     The "Class" that Plaintiff seeks to represent is defined as follows: All persons whose Personal Information was maintained by J.J.F. Management Services Inc. d.b.a. Fitzgerald Auto Malls and accessed or acquired during the cybersecurity incident discovered on or about February 4, 2024.

76.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parent entities, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

77.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

### Allegations of Numerosity

78.     Pursuant to Md. Rule 2-231(a)(1), the Class Members are so numerous that the joinder of all members is impracticable. Upon information and belief, there are thousands (1,000-9,999) or tens of thousands (10,000 – 99,999) of individuals whose Personal Information may have been improperly accessed in the Data Breach.

10

79. In the alternative, the class is in the hundreds of thousands (100,000-999,999) or in excess of one million individuals (1,000,000 or more).

80. The Class is readily identifiable within Defendant's internal records.

### Identification of Common Questions of Law or Fact

81. Pursuant to Md. Rule 2-231(a)(2), the questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

82. A common question of law or fact is whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and class members.

83. A common question of law or fact is whether Defendant had a duty not to disclose the Personal Information of Plaintiff and class members to unauthorized third parties.

84. A common question of law or fact is whether Defendant had duties not to use the Personal Information of Plaintiff and class members for non-business purposes.

85. A common question of law or fact is whether Defendant failed to adequately safeguard the Personal Information of Plaintiff and class members.

86. A common question of law or fact is whether and when Defendant actually learned of the Data Breach.

87. A common question of law or fact is whether Defendant adequately, promptly, and accurately informed Plaintiff and class members that their PI had been compromised.

88. A common question of law or fact is whether Defendant violated the law by failing to promptly notify Plaintiff and class members that their PI had been compromised,

89. A common question of law or fact is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the

information compromised in the Data Breach.

90.     A common question of law or fact is whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur.

91.     A common question of law or fact is whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Personal Information of Plaintiff and class members.

92.     A common question of law or fact is whether Plaintiff and class members are entitled to actual, consequential, and/or nominal damages as a result of Defendant' wrongful conduct.

93.     A common question of law or fact is whether Plaintiff and class members are entitled to restitution as a result of Defendant' wrongful conduct.

94.     A common question of law or fact is whether Plaintiff and class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

### Allegations of Typicality

95.     Pursuant to Md. Rule 2-231(a)(3), Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data Breach due to Defendant's misfeasance.

### Adequacy of Representation

96.     Pursuant to Md. Rule 2-231(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the class members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other members of the class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the class and the infringement of the rights Plaintiff

has suffered are typical of other class members.

97.     Plaintiff has retained counsel experienced in complex intellectual property litigation, information technology litigation and class action litigation.

98.     Undersigned counsel, Eric Menhart, has litigated and tried complex technology cases in state and federal courts for nearly twenty years. Among other things, Menhart has been quoted or featured in numerous media outlets, including Forbes, Baltimore Sun, Washington Post, USA Today, CNN and Fox News on IT and IP legal issues. Menhart has also successfully litigated statutes such as the Stored Communications Act and the Computer Fraud and Abuse Act in federal trial and appellate courts. Menhart's CV will be presented to the Court at an appropriate time.

### Predominance

99.     Pursuant to Md. Rule 2-231(b)(2), Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that the Plaintiff's and Class Members' data was maintained and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant's policies challenged herein apply to and affect Class

100.    The data breach affected class members uniformly and Plaintiff's claims alleged herein are based on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

### Superiority

101.    Pursuant to Md. Rule 2-231(b)(3), Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will

permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant.

102.    Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

103.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and class members for the wrongs alleged.

104.    If the matter was not pursued as a class action Defendant would gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual class member with superior financial and legal resources.

105.    The costs of individual suits could unreasonably consume the amounts that would be recovered.

106.    Proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each class member to recover on the cause of action alleged.

107.    Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this instant litigation.

108.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, including its privacy policy, uniform methods of data collection, the consistent provisions of the relevant laws, and the ascertainable identities of class members demonstrate that there would

14

be no significant manageability problems with prosecuting this lawsuit as a class action.

109.    Adequate notice can be given to class members directly using information maintained in Defendant's records.

110.    Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of class members, Defendant may continue to refuse to provide proper notification to class members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Petition.

111.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

112.    Likewise, under Md. Rule 2-231(c)(4), numerous issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

113.    One issue appropriate for certification is whether Defendant owed a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

114.    Another issue appropriate for certification is whether Defendant breached a legal duty to Plaintiff and class members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information.

115.    Another issue appropriate for certification is whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security.

116.    Another issue appropriate for certification is whether Defendant adequately,

accurately and lawfully informed Plaintiff and class members that their Personal Information had been compromised.

117.    Another issue appropriate for certification is whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

118.    Another issue appropriate for certification whether unauthorized parties obtained Class Members' Personal Information via the Data Breach.

119.    Another issue appropriate for certification is whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and class members.

120.    Another issue appropriate for certification is whether class members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I - Negligence

121.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

122.    FitzMall had a duty to the Plaintiff to maintain data security measures consistent with statutory and industry standards.

123.    FitzMall had a duty to the Plaintiff to design, maintain, or test security systems to ensure that Plaintiff's PI in their possession was adequately secured and protected.

124.    FitzMall had a duty to the Plaintiff to implement processes that would detect a breach of its security system in a timely manner.

125.    On information and belief, FitzMall breached each of these duties, as evidenced

16

by the events described in this complaint.

126.     FitzMall knew or should have known of the risks inherent in collecting, maintaining, and storing PI and financial records of Plaintiff and the heightened risk of doing so without adequate security systems and protocols.

127.     FitzMall owed a duty to Plaintiff and class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

128.     On information and belief, FitzMall breached the above duty, as evidenced by the events described in this complaint.

129.     FitzMall had a duty to prevent foreseeable harm to Plaintiff. This duty existed because Plaintiff and the class members were foreseeable and probable victims of inadequate security practices.

130.     It was foreseeable that Plaintiff and the class members would be harmed by the failure to protect their PI because unauthorized actors routinely attempt to steal such information and use it for nefarious purposes.

131.     FitzMall breached the duties it owed to Plaintiff and class members to keep their information secure.

132.     But for FitzMall's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PI would not have been compromised.

133.     On information and belief, FitzMall had numerous opportunities in advance of the breach to reasonably implement adequate cyber security measures as part of their duties to the Plaintiff, but failed to do so.

134.     On information and belief, Defendant failed to maintain data security measures

17

consistent with statutory and industry standards.

135.    On information and belief, Defendant failed to implement numerous measures recommended by the FBI as proactive preventative measures to maintain computer network security and avoid attacks, such as the one that resulted in the breach.

136.    Plaintiff failed to implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

137.    Plaintiff failed to enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

138.    Plaintiff failed to scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

139.    Plaintiff failed to configure firewalls to block access to known malicious IP addresses.

140.    Plaintiff failed to patch operating systems, software, and firmware on devices.

141.    Plaintiff failed to consider using a centralized patch management system

142.    Plaintiff failed to set anti-virus and anti-malware programs to conduct regular scans automatically.

143.    Plaintiff failed to manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

144.    Plaintiff failed to Configure access controls—including file, directory, and

18

network share permissions—with least privilege in mind. If a user only needed to read specific files, the user should not have written access to those files, directories, or shares.

145.    Plaintiff failed to disable macro scripts from office files transmitted via email. As one example, Plaintiff likely failed to consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

146.    Plaintiff failed to implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

147.    Plaintiff failed to consider disabling Remote Desktop protocol (RDP) if it is or was not being used.

148.    Plaintiff failed to use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

149.    Plaintiff failed to execute operating system environments or specific programs in a virtualized environment.

150.    Plaintiff failed to categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

151.    Plaintiff failed to conduct an annual penetration test and vulnerability assessment.

152.    On information and belief, Defendant failed to implement the measures recommended by the United States Cybersecurity & Infrastructure Security Agency to prevent and detect cyber-attacks, including the attack that resulted in the breach.

153.    On information and belief, Defendant failed to implement the measures recommended by the Microsoft Threat Protection Intelligence Team to prevent and detect cyber-

attacks, including the attack that resulted in the breach.

154.    As a direct and proximate result of FitzMall's negligence and breach of duties, Plaintiff sustained and will continue to sustain economic loss and other harms.

155.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant had a duty to prevent foreseeable harm to others.

156.    This duty existed because Plaintiff and Class Members were foreseeable and probable victims of inadequate security practices.

157.    In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their Personal Information, because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant also knew that it was more likely than not Plaintiff and other Class Members would be harmed, and in fact, suffered harm as identified above.

158.    Defendant breached the duties they owed to Plaintiff and Class Members to keep their information secure. But for Defendant' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, and without any wrongdoing on the part of Plaintiff or Class Members, Plaintiff's and Class Members' Personal Information would not have been compromised.

159.    Plaintiff relies on the doctrines of actual and apparent agency, *res ipsa loquitur*, and *respondeat superior* where applicable.

160.    FitzMall's negligence caused Plaintiff to suffer harm as described above and actual damages in an amount to be determined at trial.

**Count II – Violation of Maryland Personal Information Privacy Act ("PIPA")**

**Md. Comm. Code §§ 14-3504**

161.    Plaintiff realleges and incorporates by reference each and every allegation set forth above.

162.    Per Maryland §14–3501(e)(1), "Personal information" (PI) means: (i) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when the data elements are not encrypted, redacted, or otherwise protected by another method that renders the information unreadable or unusable: 1. A Social Security number, an Individual Taxpayer Identification Number, a passport number, or other identification number issued by the federal government; 2. A driver's license number or State identification card number; 3. An account number, a credit card number, or a debit card number, in combination with any required security code, access code, or password, that permits access to an individual's financial account; 4. Health information, including information about an individual's mental health; 5. A health insurance policy or certificate number or health insurance subscriber identification number, in combination with a unique identifier used by an insurer or an employer that is self-insured, that permits access to an individual's health information.

163.    The actions of Defendant described in this complaint constitute breach of a security system under §14–3504.

164.    FitzMall violated PIPA because it did not provide notice of the breach of its security in accordance with the requirements of §14–3504.

165.    Maryland Law requires that "notification . . . shall be given as soon as reasonably practicable, but not later than 45 days after the business discovers or is notified of the breach of the security of a system." *See* Md. Comm. Code. §14–3504(b)(3).

21

166.    Despite this requirement, FitzMall's notification of April 25, 2025, was delivered more than four hundred (400) days after FitzMall admitted it "detected unauthorized access to [their] network" on February 4, 2024.

167.    None of the communications following the breach, from FitzMall to Plaintiff or members of the class, were delivered timely. Defendant's failure to timely notify Plaintiff and members of the class constitutes a violation of the statute.

168.    Maryland Law also requires that the notification include "Contact information for the business making the notification, including the business' address, telephone number, and toll-free telephone number if one is maintained." *See* Md. Comm. Code. §14–3504(g)(2).

169.    The April 25, 2025, notification email did not contain FitzMall's address. This failure constitutes a violation of the statute.

170.    The April 25, 2025, notification email did not contain FitzMall's telephone number. This failure constitutes a violation of the statute.

171.    None of the communications from FitzMall to Plaintiff or other members of the class, following the breach, included all of the information required in §14–3504. This failure constitutes a violation of the statute.

172.    On information and belief, FitzMall also failed to provide adequate or timely notice to the Maryland Attorney General of the incident, as required by §14–3504(h). This possible failure constitutes a violation of the statute.

173.    Through FitzMall's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

**Count III – Action for Violation of Maryland Consumer Protection Act ("CPA")**

**Md. Comm. Code §§ 13-301**

174. Plaintiff realleges and incorporate by reference each and every allegation set forth above.

175. FitzMall has engaged in unfair or deceptive trade practices, in violation of Maryland Code, Commercial Law Article §§ 13-301 and 13-303.

176. Under Maryland Code, Commercial Law Article §14–3508, a violation of MD PIPA is an unfair or deceptive trade practice as defined in the Maryland Consumer Protection Act.

177. FitzMall's violations of MD PIPA, as described above, therefore are unfair and deceptive trade practices and violations of § 13-301.

178. Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

179. Plaintiff should also be awarded attorneys' fees as authorized by Maryland Code, Commercial Law § 13-408(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

A. An Order certifying the instant matter as a class action;

B. Injunctive relief, precluding Defendant from further engaging in activity complained of herein;

C. Declaratory relief, stating that Defendant is liable to Plaintiff, and any putative class, for the actions complained of herein;

D. An award for damages, in an amount to be proven at trial, of any and all statutory

23

damages, treble damages, punitive damages or any other damages that may be available to Plaintiff under any statute or cause of action; including, but not limited to any statute set forth herein;

E.  An award of attorney's fees, pursuant to any applicable statute allowing or requiring such fees, or pursuant to common law; including, but not limited to, statutes cited herein;

F.  An award of reasonable costs and litigation expenses.

G.  An award of pre-judgment and post-judgment interest, to the extent allowable; and

H.  Such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, pursuant to Md. Rule 2-325, respectfully demands a trial by jury of all issues so triable.

* * *

Respectfully submitted,

*/s/ Eric Menhart, Esq.*
Eric Menhart, Esq.*
Lexero Law
80 M St SE, Ste 100, Washington, DC 20003
Phone: 855-453-9376 Ext. 101
Fax: 855-453-9376
* Admitted in Maryland

*Attorney for Plaintiff and Proposed Class*

E-FILED; Montgomery Circuit Court
Docket: 5/2/2025 5:59 PM; Submission: 5/2/2025 5:59 PM
Envelope: 21054914

IN THE CIRCUIT COURT FOR   Montgomery County
(City/County)

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a).

   *Defendant:* You must file an Information Report as required by Rule 2-323(h).

### THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT        CASE NUMBER _____
(Clerk to insert)

**CASE NAME:** Abraham _____ vs. J.J.F. Management Services Inc. _____

**PARTY'S NAME:** Arnold Abraham (Plaintiff)                    PHONE: _____ (Defendant)

**PARTY'S ADDRESS:** c/o Lexero Law, 80 M St SE, Ste 100, Washington, DC 20003

**PARTY'S E-MAIL:** _____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** Eric Menhart, Esq. _____ PHONE: 202-904-2818

**PARTY'S ATTORNEY'S ADDRESS:** Lexero Law, 80 M St SE, Ste 100, Washington, DC 20003

**PARTY'S ATTORNEY'S E-MAIL:** Eric.Menhart@Lexero.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No If yes, Case #(s), if known: _____

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours 5 ____ days

### PLEADING TYPE

**New Case:**       ☒ Original        ☐ Administrative Appeal        ☐ Appeal
**Existing Case:** ☐ Post-Judgment  ☐ Amendment
*If filing in an existing case,* skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY *(Check one box.)*

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☒ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint – DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☒ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Worker's Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. – Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☒ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 12/2022)          Page 1 of 3

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☒ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☒ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☒ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☒ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☒ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) |
|---|
| ☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☒ Over $100,000 |
| ☐ Medical Bills $ _____    ☐ Wage Loss $ _____    ☐ Property Damages $ _____ |

| ALTERNATIVE DISPUTE RESOLUTION INFORMATION |
|---|
| Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply) |
| A. Mediation    ☒ Yes ☐ No    C. Settlement Conference    ☒ Yes ☐ No |
| B. Arbitration    ☒ Yes ☐ No    D. Neutral Evaluation    ☒ Yes ☐ No |

| SPECIAL REQUIREMENTS |
|---|
| ☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041** |
| ☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049** |

| ESTIMATED LENGTH OF TRIAL |
|---|
| *With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.* |
| ***(Case will be tracked accordingly)*** |
| ☐ 1/2 day of trial or less    ☐ 3 days of trial time |
| ☐ 1 day of trial time    ☒ More than 3 days of trial time |
| ☐ 2 days of trial time |

| BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM |
|---|
| ***For all jurisdictions,*** *if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.* |
| ☐ **Expedited** - Trial within 7 months of    ☐ **Standard** - Trial within 18 months of |
| Defendant's response    Defendant's response |
| EMERGENCY RELIEF REQUESTED |

<table>
<tr><td colspan="2"><strong>COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)</strong></td></tr>
</table>

| |
|---|
| *FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.* |

❏ **Expedited** - Trial within 7 months of Defendant's response          ❏ **Standard** - Trial within 18 months of Defendant's response

---

***IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.***

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | |
|---|---|
| ❏ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ❏ Civil-Short | Trial 210 days from first answer. |
| ❏ Civil-Standard | Trial 360 days from first answer. |
| ❏ Custom | Scheduling order entered by individual judge. |
| ❏ Asbestos | Special scheduling order. |
| ❏ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ❏ Tax Sale Foreclosures | Special scheduling order. |
| ❏ Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | |
|---|---|
| ❏ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ❏ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ❏ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ❏ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

05/02/2025
Date

/s/Eric Menhart, Esq.          Maryland Barred
Signature of Attorney / Party          Attorney Number

80 M St SE
Address

Eric Menhart, Esq.
Printed Name

Washington          DC          20003
City          State          Zip Code



80 M St SE Ste 100
Washington, DC 20003
Phone/Fax: 855-4-LEXERO
www.Lexero.com

*Eric J. Menhart, Esq.*
Admitted in DC, MD, VA

*Via E-Filing*

Friday, May 02, 2025

Clerk of Court
Montgomery County Circuit Court
50 Maryland Avenue
Rockville, MD 20850

**Re: Request for Summons in Abraham v. J.J.F. Management Services, Inc.**

To Whom It May Concern:

My firm represents Ms. Ryan in a newly filed matter, attached hereto. Given that the new complaint has been filed, I request that you issue a summons directed to:

J.J.F. Management Services, Inc.
Serve: CSC-Lawyers Incorporating Serv.
7 St. Paul Street Suite 820
Baltimore, MD 21202

Your prompt response is respectfully requested. My direct line is 202-904-2818 or I may be reached via email at Eric.Menhart@Lexero.com. Thank you.

Yours truly,

Eric J. Menhart

**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
Main: 240-777-9400
50 Maryland Avenue
Rockville, Maryland 20850

|  |  |
|---|---|
| **Case Number:** | **C-15-CV-25-002188** |
| **Other Reference Number(s):** | |

**ARNOLD ABRAHAM, ET AL. VS. J.J.F. MANAGEMENT SERVICES INC.**

Date: 5/5/2025

## ORDER FOR MANDATORY PRETRIAL HEARING – Civil Track 3
## COMPLAINT FILED ON 05/02/2025

In accordance with Maryland Rules of Procedure, Rule 2-504, and in order to administer the trial of cases in a manner consistent with the ends of justice, in the shortest possible time and at the least possible cost to the Court and to litigants, it is this day, by the Circuit Court for Montgomery County, Maryland,

**ORDERED,** that the parties and trial counsel shall appear in court for a Pretrial Hearing. No further notice will be given of this date. Unrepresented parties and/or trial counsel shall meet at least two weeks prior to the hearing date to prepare a written joint pre-trial statement and endeavor to settle the case. If the parties cannot agree to the meeting place or date, it shall be two weeks before the hearing date at 9:00 a.m. in the lobby of the Court House. The joint pre-trial statement shall be signed by all parties and their attorneys and shall be filed with the court at least seventeen days before the Pretrial Hearing and shall contain the following:

1. Nature of the Case: A brief, non-argumentative statement suitable for reading to a jury.

2. Claims and/or Defenses: Each party to set forth a concise statement of all claims and defenses which that party is submitting for trial.

3. Undisputed Issues and Facts: List all issues not in dispute and set forth stipulated facts.

4. Disputed Issues: List each disputed issue and the principal contentions of all parties respecting each.

5. Relief Sought: Specify nature and amount of each item of damage claimed or description of equitable relief sought by each party.

6. Citations: List any cases or statutes which need to be called to the Court's attention.

7. Pending Motions: List title, movant, and filing date of pending motions.

8. Witnesses: Name, address, and telephone number of each person who may be called to testify. As to experts, list matters about which each expert will testify. No party may call at trial any witness omitted from that party's pre-trial statement, except for impeachment or rebuttal purposes.

9. Exhibits: Attach a listing of the exhibits to be offered in evidence by each party at the trial, other than those expected to be used solely for impeachment, indicating which exhibits the parties agree may be offered in evidence without the usual authentication. Complete list of exhibits identifying by exhibit number each document that may be offered at trial. (Stickers to be attached to each exhibit are available in Clerk's office.) Any objections to another party's exhibits should be stated.

10. Deposition Testimony: Designation by page and line of deposition testimony to be offered as substantive evidence, not impeachment.

11. Pleadings and Discovery Responses: Designation by page and paragraph of any pleading or discovery response to be offered as substantive evidence, not impeachment.

Arnold Abraham, et al. vs. J.J.F. Management Services Inc.          Case Number: C-15-CV-25-002188
                                                                   Other Reference Number(s):

12. <u>Demonstrative or Physical Evidence</u>: Describe any items of non-testimonial, non-documentary evidence - - models, samples, objects, etc. – to be utilized at trial.

13. <u>Videotapes</u>: Identify any videotapes to be shown to the jury and authority for doing so.

14. <u>Requested Jury Selection Questions</u>: Identify those agreed upon and include any objections made by either side.

15. <u>Pattern Jury Instructions</u>: Identify those agreed upon and those not agreed upon. Designate the source of the instruction.

16. <u>Non-Pattern Jury Instructions</u>: Supply complete text of each instruction, with authorities, on a separate page.

17. <u>Verdict Sheet (if requested)</u>: Text of verdict sheet, including any special interrogatories, to be submitted to the jury.

18. <u>Settlement</u>: Minimum demand; Maximum offer.

19. <u>Estimated Length of Trial</u>: _____ days.

and it is further

**ORDERED**, that counsel and unrepresented parties shall file the Joint Pretrial Statement no later than seventeen days (**DEADLINE: January 27, 2026**) before the Pretrial Hearing; and it is further,

**ORDERED**, for cases that have not reached a settlement by the Pretrial Hearing date, that the parties and their counsel and representatives with the authority to settle shall participate in good faith in any Settlement Conference, that may be set at the Pretrial.

_____
5/5/2025
Date

_____
Administrative Judge

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility. The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.

CC:     Arnold Abraham

        J.j.f. Management Services Inc.

        Eric James  Menhart



**CIRCUIT COURT FOR MONTGOMERY COUNTY,**  Main: 240-777-9400
**MARYLAND**
50 Maryland Avenue
Rockville, Maryland 20850

| | |
|---|---|
| **Case Number:** | **C-15-CV-25-002188** |
| **Other Reference Number(s):** | |

**ARNOLD ABRAHAM, ET AL. VS. J.J.F. MANAGEMENT SERVICES INC.**

Date: 5/5/2025

### SCHEDULING NOTICE AND ORDER OF COURT - Civil Track 3
### COMPLAINT FILED ON 05/02/2025

It is by the Circuit Court for Montgomery County, Maryland, **ORDERED** as follows:

1.) <u>Proof of Service.</u> Within sixty-five (65) days of the filing of the Complaint, Plaintiff must file proof of service of the following on each of the Defendants: copies of the Summons, the Complaint, this Scheduling Notice and Order of Court, Order for Mandatory Settlement Conference/Pretrial Hearing, and the Scheduling Order.

    a.) As to any Defendant for whom such proof of service has not been filed, the Court will consider dismissing the Complaint without prejudice pursuant to Rule 2-507.

    b.) As to any Defendant not timely served, the Court may sever the case against that party.

    c.) **A motion for alternative service as to any unserved Defendant may not be filed after the 121st day after filing of the complaint:  DEADLINE: September 02, 2025**

    d.) **Defendants who are not served by the 121st day after filing of the complaint are subject to dismissal under Rule 2-507.**

    e.) As to any Defendant served with the Summons and Complaint, the Defendant must file the Defendant's Civil Information Form with the initial pleading and mail a copy to Plaintiff.

    f.) <u>**FAILURE TO SERVE A PARTY WILL NOT RESULT IN MODIFICATION OF THE DEADLINES OR REISSUANCE OF THE SCHEDULING ORDER.**</u>

2.) <u>Answer or Other Responsive Pleading.</u> Within the time permitted under Maryland Rules, each Defendant must respond to the Complaint by filing an Answer or other responsive pleading. These pleadings must be filed in accordance with Rule 2-321. If no timely response has been filed, the Court, upon request, may enter an Order of Default pursuant to Rule 2-613.

3.) <u>Initial Discovery.</u> No later than ninety (90) days from the filing of the complaint, the parties shall complete sufficient initial discovery to enable them to make decisions regarding (a) settlement, (b) consideration of available and appropriate forms of alternative dispute resolution, (c) limitation of issues, (d) stipulations, (e) any issues relating to preserving discoverable information, (f) any issues relating to discovery of electronically stored information, including the form in which it is to be produced, (g) any issues relating to claims of privilege or of protection, and (h) other matters that may be considered at the hearing, including:

    a) **Initial Disclosure of the Plaintiff's Experts to occur no later than deadline provided on the Scheduling Order:** The deadline for the disclosure of Plaintiff's experts is approximately ninety (90) days from the date of filing. Given the early stage of discovery, while disclosure of the area of expertise is expected, some flexibility will be applied as to the specific opinion of the expert. The obligation to supplement the information provided by this deadline continues and must be provided without delay as soon as it is known to the Plaintiff, but no later than one hundred twenty (120) days from the filing of the complaint, without leave of the Court. This includes any substance of the findings and opinions, grounds for each opinion on which the expert is expected to testify, as well as copies of all reports received from each expert witness. Under no circumstances may this information be withheld.

4.) <u>Discovery of Electronic Information.</u> Further, with regard to the discovery of electronic information, the Parties shall confer in person or by telephone and attempt to reach agreement, or narrow the areas of disagreement, as to

Arnold Abraham, et al. vs. J.J.F. Management Services Inc.            Case Number: C-15-CV-25-002188
                                                                     Other Reference Number(s):

the preservation of electronic information, if any, and the necessity and manner conducting discovery regarding electronic information, and the parties should address the following:

a) Identification and retention of discoverable electronic information and what, if any, initial discovery and any party requests in order to identify discoverable electronic information;
b) Exchange of discoverable information in electronic format where appropriate, including:
   i) The format of production, i.e., PDF, TIFF or JPEG file or native formats such as Microsoft Word, Word Perfect, etc., and the storage media on which the information shall be exchanged; and
   ii) Whether separate indices will be exchanged and whether the documents and information exchanged will be electronically numbered.
c) Whether the parties agree as to the apportionment of costs for production of electronic information that is not maintained on a party's active computers, computer servers or databases;
d) The manner of handling inadvertent production of privileged materials; and
e) Whether the parties agree to refer electronic discovery disputes to a Special Magistrate for resolution.

The parties shall reduce all areas of agreement, including any agreements regarding inadvertent disclosure of privileged materials, to a stipulated order to be presented to the court.

5.) Attorneys' Fees. If a party intends to assert a "substantial claim" for attorneys' fees, counsel shall provide a written statement to the Court, setting forth whether the claim is pursuant to law, statute or contract, identifying the legal theory, statute or contract provision, and whether the claim is triable by jury. The Court will determine whether to require enhanced documentation, quarterly statements, or other procedures permitted by Maryland Rules. If triable by jury, the Court will determine the necessity of a separate discovery schedule, to include, if appropriate, the designation of experts relating to this issue. (See Rules 2-703, 2-704, and 2-705.)

6.) Mediation. PLEASE BE ADVISED THAT THE COURT WILL ORDER MEDIATION IN THE ABOVE-CAPTIONED CASE. PLEASE DISCUSS ADR/MEDIATION WITH THE OPPOSING PARTY (OR COUNSEL, IF APPLICABLE). Parties choosing a mediator must pay the rate agreed upon by the parties and the mediator. Where the court designates a mediator, pursuant to Rule 17-208, the parties will pay the hourly rate established by the court. Counsel/parties may object to participating in mediation in accordance with Maryland Rule 17-202(f) within thirty (30) days after entry of the order, may file (A) an object to the referral, (B) an alternative proposal, or (C) a "Request to Substitute ADR Practitioner" substantially in the form set forth in Rule 17-202(g).

_____5/5/2025_____          _____
       Date                        Administrative Judge

* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.

CC:    Arnold Abraham

       J.j.f. Management Services Inc.

       Eric James Menhart



**CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**
50 Maryland Avenue
Rockville, Maryland  20850

Main: 240-777-9400

| | |
|---|---|
| **Case Number:** | **C-15-CV-25-002188** |
| **Other Reference Number(s):** | |

**ARNOLD ABRAHAM, ET AL. VS. J.J.F. MANAGEMENT SERVICES INC.**

Date: 5/5/2025

## SCHEDULING ORDER – TRACK 3
## COMPLAINT FILED ON 05/02/2025

THIS ORDER IS YOUR OFFICIAL NOTICE OF CASE DEADLINES AND HEARINGS REQUIRING APPEARANCES.  FAILURE TO APPEAR AT HEARINGS OR COMPLY WITH ALL REQUIREMENTS MAY RESULT IN DISMISSAL, DEFAULT JUDGMENT, EXCLUSION OF WITNESSES AND/OR EXHIBITS, ASSESSMENTS OF COSTS AND EXPENSES, INCLUDING ATTORNEY FEES, OR OTHER SANCTIONS.

| EVENT:  [ATTENDANCE REQUIRED AT EVENTS] | DEADLINE: |
|---|---|
| *DEADLINE: PLT EXPERTS IDENTIFIED* | July 31, 2025 |
| *DEADLINE: MOTION FOR ALTERNATIVE SERVICE FILED* | September 02, 2025 |
| *DEADLINE: DEF EXPERTS IDENTIFIED* | September 29, 2025 |
| *DEADLINE: ALL WRITTEN DISCOVERY SERVED BY* | December 01, 2025 |
| *DEADLINE: DISCOVERY COMPLETED* | January 12, 2026 |
| *DEADLINE: ADD'L PARTIES JOINDER* | January 20, 2026 |
| MEETING OF ALL COUNSEL, Time and place to be determined PLUS DEADLINES: | January 27, 2026 |
| *DEADLINE: DISPOSITIVE MOTIONS FILED* | January 27, 2026 |
| *DEADLINE: JOINT PRETRIAL STATEMENT FILED* | January 27, 2026 |
| *DEADLINE: RULE 2-504.3(B) NOTICE* | January 27, 2026 |
| *DEADLINE: ADR DEADLINE* | February 02, 2026 |
| PRETRIAL HEARING ATTENDANCE REQUIRED | February 26, 2026 at 1:30 PM |
| *DEADLINE: PLEADING AMENDMENT TO BE DETERMINED AT PRETRIAL.* | |
| *DEADLINE: VOIR DIRE, JURY INSTRUCTIONS AND VERDICT SHEET DUE 20 DAYS BEFORE TRIAL DATE* | |

**TRIAL COUNSEL SHALL APPEAR** AT THE PRETRIAL HEARING.  MOTIONS FILED IN CIVIL TRACK 3 ACTIONS SHALL NOT EXCEED 15 PAGES INCLUDING ANY MEMORANDUM OF LAW AND OPPOSITION/REPLY MOTIONS SHALL NOT EXCEED 10 PAGES WITHOUT LEAVE OF THE COURT. IDENTIFICATION OF ADDITIONAL PARTIES AND AMENDMENT OF PLEADINGS GOVERNED BY RULES 2-211, 2-331, 2-332 and 2-341.
THE **TRIAL DATE** SHALL BE SET AT THE PRETRIAL HEARING BETWEEN THE DATES NOTED BELOW. COUNSEL ARE ENCOURAGED TO CLEAR DATES WITH ONE ANOTHER AND THE ASSIGNMENT OFFICE PRIOR TO THE CASE BEING CALLED.

**Trial Date Between:**     **March 16, 2026**     and     **June 22, 2026**

**ANY MODIFICATIONS OF THIS SCHEDULING ORDER MUST BE REQUESTED BY WRITTEN MOTION FILED IN ADANCE OF THE DEADLINES OR HEARING DATES SOUGHT TO BE MODIFIED, PROVIDING GOOD CAUSE TO JUSTIFY ANY MODIFICATION THEREOF.**

**Arnold Abraham, et al. vs. J.J.F. Management Services Inc.**    **Case Number: C-15-CV-25-002188**
                                                                  **Other Reference Number(s):**

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility.  The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

_____5/5/2025_____          _____
        Date                        Administrative Judge


\* IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL SHALL NOTIFY THE COURT AT (240) 777-9035 OR (240) 777-9106. QUESTIONS? Please see the Court's GUIDE TO DCM ORDERS and https://montgomerycountymd.gov/cct/departments/dcm.html.


CC:    Arnold Abraham

       J.j.f. Management Services Inc.

       Eric James  Menhart

 **UNITED STATES POSTAL SERVICE** **Click-N-Ship®**

**G**

usps.com
$4.33
US POSTAGE

9400 1301 0935 5066 0230 92 0043 3000 0002 1202

 U.S. POSTAGE PAID



05/08/2025    Mailed from 20003    938367252032677

### USPS GROUND ADVANTAGE™

05/08/2025

LEXERO LAW
ERIC J MENHART
80 M ST SE STE 100
WASHINGTON DC 20003-3550

RDC 01

C031



ATTN: J.J.F. MANAGEMENT SERVICES, INC.
CSC LAWYERS INCORPORATING SERVICE C
STE 820
7 SAINT PAUL ST
BALTIMORE MD 21202-1681

### USPS TRACKING #



9400 1301 0935 5066 0230 92



